WHALEY, Respondent, vs. JARRETT and another, Appellants.

October 15 — November 1, 1887.

*Easement of way: Right to close with gates: Prescription.*

1. A deed of a strip of land, described by metes and bounds, one of
which was a public highway, "for a private road and for private
road purposes," in terms granting "a mere easement of travel and
private road purposes, but no other or further estate whatever, or
title or interest of any kind whatever," does not give to the grantee
the right to an open way; but the owner of the servient estate
may erect gates at each end thereof, in such a manner as not to
interfere with the reasonable enjoyment of the way by the grantee,
and require him to close and fasten them after passing through.
2. Proof that some of the defendants in an action for trespass upon
land had used a strip of land as a private way for a number of
years, without proof of adverse claim, does not give them a pre-
scriptive right to have such way left open without gates.

APPEAL from the Circuit Court for *La Fayette* County.
This is an action for a trespass in leaving open a gate
erected by the plaintiff at the end of a private way which
crossed his land. The defendants owning the easement
claim the right to have it kept open. All the other essen-
tial facts appear in the opinion.

For the appellants there was a brief by *M. M. Cothren*
and *H. S. Magoon*, and oral argument by *Mr. Cothren*.
Among other things, they contended that by describing
the private way by metes and bounds, and making the high-
way the boundary at one end, the grantor had conveyed
an open way. The right granted was to pass on and over
the whole width of the way, not diminished by the gates.
The defendants had used the way as an open way for twenty
years without interruption, and thereby acquired a pre-
scriptive right. Sec. 4211, R. S.; 2 Washburn on Real Prop-
erty, p. 42.

For the respondent there was a brief by *Orton & Osborn*,

and oral argument by *C. F. Osborn*.  To the point that the rights of the defendants were limited by the grant, and they were not entitled to an open way, they cited *Bakeman v. Talbot*, 31 N. Y. 369; *Maxwell v. McAtee*, 9 B. Mon. 20; Goddard's Law of Easements (Bennett's ed.), 331; Washburn on Easem. (3d ed.) 264; *Baker v. Frick*, 45 Md. 337; *Garland v. Furber*, 47 N. H. 301; *Huson v. Young*, 4 Lans. 64; *Houpes v. Alderson*, 22 Iowa, 160; *Connery v. Brooke*, 73 Pa. St. 80; *Johnson v. Kinnicutt*, 2 Cush. 157.

COLE, C. J.  The rights of the defendants in the strip of land used for a private way must rest upon the clause in the deed to Alderson made by Stephens, June 7, 1865. That deed conveyed to Alderson certain lands in section 6, which are west of the strip in question, and contains this clause: "Also the following described strip of land, to be used by said second party as a private road, and for private road purposes, to wit: Commencing at the N. W. corner of the S. W. ¼ of section 5, T. 1, R. 1, east of the 4th P. M., running thence E. 27 and 33–100 chains, to the present highway running from Benton to Elk Grove and Platteville; then south on the line of the said public highway 24 feet; thence west 27 and 33–100 chains; and thence north 24 feet, to the place of beginning,— containing one and 6–100 acres of land; in and to which said last-described strip of land there is hereby granted to said second party a mere easement of travel and private road privilege, but no other or greater or further estate whatever, or title or interest of any kind whatever."

Now, the question is, can a party possessing the rights thus granted in the deed over a strip of agricultural land, forming a part of a farm, insist that this may be kept open at each end; or may the owner of the land which is subject to the easement lawfully maintain gates at the end of the strip which do not unreasonably interfere with the right to

Whaley vs. Jarrett and another.

travel over the way by those in whose favor the easement exists, and impose upon such persons using the way the duty of closing and fastening the gates after passing through them? This question seems to be very clearly settled by the authorities to which we were referred by the respondent's counsel. *Maxwell v. McAtee*, 9 B. Mon. 20; *Bakeman v. Talbot*, 31 N. Y. 366; *Garland v. Furber*, 47 N. H. 301; *Houpes v. Alderson*, 22 Iowa, 160; *Amondson v. Severson*, 37 Iowa, 602; *Baker v. Frick*, 45 Md. 337; Wasbh. Easem. (3d ed.), top pp. 230, 231, 264. The learned author last cited, on page 264, uses this language: "It seems to be now settled that, if the land-owner is not restrained by the terms of the grant of a right of way across his lands for agricultural purposes, he may maintain fences across such way, if provided with suitable bars or gates for the convenience of the owner of the way. He is not obliged to leave it as an open way, nor to provide swing gates, if a reasonably convenient mode of passage is furnished." Indeed, there is no room for doubt, upon the authorities, that a grant of way across one's land does not imply that it is to be open and free from gates, unless the nature of the use to which it is to be applied indicates thereby that it should be open and unobstructed. It is a principle of law that nothing passes as an incident to the grant of an easement but what is requisite to the fair enjoyment of the privilege. 3 Kent's Comm. (13th ed.), 427.

In this case, the easement is a mere right of travel and private road privilege, without defining the manner of its enjoyment, whether with or without gates. There must be a reasonable use of such a privilege. If the defendants are entitled to an open, unobstructed passage to the public highway, the lands of the plaintiff must be either thrown open and exposed to cattle running at large on the highway, or he must be to the expense of building and maintaining a fence on each side of the strip, to protect his crops.

To hold that the grant imposes upon him any such loss or burden would be giving it an unreasonable construction. The owner of the land, for the purpose of cultivating it, may use gates of sufficient width to accommodate passage with teams over the way, so fastened and hung that they can be conveniently opened and closed by those passing through them. This will secure to the defendants a fair and reasonable enjoyment of the way, and of all rights of passage granted. The learned counsel for the defendants says that the words descriptive of the grant, especially the language " to the public highway running from Benton to Elk Grove," etc., necessarily implies an open way, and precludes the plaintiff from the right of closing the open terminus. But the right granted was to pass into the highway, which surely does not imply the right to pass over every inch of the twenty-four feet in width. As we have said, the defendants are entitled to a reasonable use and enjoyment of the way, and this is quite consistent with the right of the plaintiff to maintain proper gates at the ends of the lane for the protection of his land. A reasonable construction should be placed upon the grant, and not a forced and unnatural one.

We do not think there is any ground for claiming that the defendants showed a right by prescription to have the way left open without gates. The right of way is really founded on express grant, and is not based on prescription. This is all the evidence shows. There is no proof of adverse user. True, Mrs. Alderson testified that she and her husband occupied a small piece of land on section 6, west of this strip, under the deed from Mr. Edwards, 'dated June 5, 1858, and that they had used the strip more or less since as a private road, and had done some work upon it; but there is nothing warranting the assumption that this use was adverse; on the contrary, the presumption is that it was permissive.

So, in every view which we have been able to take of the case, we are forced to the conclusion that the judgment of the circuit court is correct and must be affirmed.

*By the Court.*— Judgment affirmed.