WILLIAM E. VAN BUSKIRK et al., complainants,

*v.*

STANDARD OIL COMPANY OF NEW JERSEY, defendant.

[Decided June 19th, 1923.]

1. Equity will enjoin an unauthorized encroachment upon or use of lands dedicated to burial purposes.

2. Setting apart land for burial purposes, permitting burials therein and enclosing the land by a fence, amounts to a dedication of the land and precludes the owner of the land from exercising his former rights therein.

3. Relatives and friends of those interred in such burial place are entitled to free ingress and egress to and from the public street or road nearest thereto, over lands which surround the cemetery and an injunction should issue to prevent disturbing, altering or destroying the burial ground and from interfering with access thereto.

4. Adverse possession of such a burial place cannot be held against the dead buried therein; nor can there be an abandonment until the bodies are removed under proper authority. It continues to retain its character as a place of sepulchre until such removal is effected.

On bill for injunction, &c.

*Mr. Aaron A. Melniker,* for the complainants.

*Mr. Pierre P. Garven,* for the defendant.

FIELDER, V. C.

James Van Boskerk, whose will was probated December 27th, 1823, died seized of a large tract of land, situate at Constable Hook, in what is now the city of Bayonne, on which he resided. Included within his homestead lot, and a few hundred feet from his mansion house, was the Van Boskerk family burial ground, about an acre in extent. By his will, dated September 8th, 1823, he devised all his real estate, with the exception "of the burying ground as it is now

enclosed," and excepting, also, other described real property, to his three sons, John, Nicholas and James, upon condition that no part thereof should be sold by them, but should be divided amongst their children at the time and in the manner they might deem fit. He designated how the real estate devised to his three sons should be divided, giving to his son John and to his heirs forever the homestead lot of forty and eight-tenths acres, making no mention of the burial ground, other than in the exception quoted. The other real estate excepted from the devise to his three sons was devised to his daughter Ann. He left him surviving his said three sons and daughter.

John Van Buskirk (son of James), who had changed the spelling of his surname, executed and delivered to his son, John Van Buskirk, Jr., a deed dated March 20th, 1864, recorded July 20th, 1864, in which he recited the will of his father and the devise thereby of all of said testator's real estate, with the exception "of the burying ground as it is now enclosed" and excepting also certain other real estate, to his sons John, Nicholas and James, upon the conditions above set out and further reciting the intention of the grantor, John Van Buskirk, by his deed to convey the land thereinafter described, to his son John Van Buskirk, Jr., in part as his portion according to the power given in the will of James Van Boskerk, and then the grantor proceeded to convey to his son John, Jr., a tract of land within whose boundaries the burial ground was located, without further reference to said burial ground.

John Van Buskirk (son of James Van Boskerk) died in or about the year 1869, leaving a will dated July 25th, 1864, by which he devised to his said son John Van Buskirk, Jr., the said homestead lot of forty and eight-tenths acres (all or the major part of which he had conveyed to said son by the deed above mentioned) without referring in the description thereof to said burial ground. He added, as the final clause of his will, the following: "It is my wish and I hereby order that the burial ground at Constable Hook, adjoining said homestead, shall not be disturbed in any man-

ner, nor used for any purpose whatever, except for sepulchre only."

By deed dated May 8th, 1905, recorded October 26th, 1905, John Van Buskirk, Jr., conveyed to Charles W. Fuller, then the agent and attorney for the defendant, the burial ground in question, by the following description:

"All and singular the land used and employed for the purpose of sepulchre and which land and premises are contained in block 256 on map above referred to and known as 'old cemetery' and containing one acre of land be the same more or less,"

and said Fuller, by deed dated November 1st, 1905, recorded January 20th, 1911, conveyed the burial ground, by the same description, to the defendant.

Under proceedings initiated and completed by the defendant prior to the deed from Van Buskirk to Fuller, the public streets leading to the burial ground were vacated by the city of Bayonne and the defendant is now in possession of such streets as the owner thereof and also of the lands surrounding the burial ground and upon delivery of the deed from Van Buskirk to Fuller, it took possession of the burial ground. It refuses to permit complainants to have access to the burial ground or to enter the same, except for the purpose of removing the bodies of complainants' ancestors at a time to be agreed upon, or to be fixed by this court. Complainants are the heirs-at-law of John Van Buskirk, Jr. (who died in 1919), the grantor to Fuller. They pray an injunction restraining the defendant from removing the remains interred in the burial ground and from desecrating or destroying said plot and for a decree that they may have a right of way over defendant's land to and from the burial ground.

The defendant insists that by the will of James Van Boskerk (who died in 1823), the devise of the forty and eight-tenths acre tract to his son John, was in fee and included the burial ground within that tract; that by deed dated March 20th, 1864, said son John conveyed to his son John, Jr., in fee, a tract of land which included the burial ground

and that John Van Buskirk, Jr., conveyed the burial ground in fee to Fuller, who conveyed to defendant. I cannot interpret the will of James Van Boskerk as intending to devise the burial ground to his son John and I am of the opinion that in devising his real estate to his three sons, James Van Boskerk expressly excepted the burial ground and made no testamentary disposition thereof. Whatever estate he had in the land enclosed as a burial ground descended to his three sons, John, Nicholas and James, and to his daughter Ann, and all that John Van Buskirk could convey to his son John, Jr., was a one-fourth interest in whatever estate James Van Boskerk died seized in 1823. The fact that John Van Buskirk, Jr., conveyed or attempted to convey all his interest in the burial ground to the defendant, does not bar his heirs-at-law, the complainants. from seeking relief in this court. Equity will grant relief in a proper case, at the suit of relatives, or even friends, whether owners of the soil of the cemetery or not, of those buried therein, because a dead body is in the custody of the law and the disturbances of its resting place and its removal is subject to the control and direction of this court. *Toppin* v. *Moriarty, 59 N. J. Eq. 115; Smith* v. *Shepherd, 64 N. J. Eq. 401; De Festatics* v. *De Festetics, 79 N. J. Eq. 488.*

But I do not think that the issue in this case should be determined by ascertaining whether or not the defendant can trace title to the burial ground by will and deed. The original Van Boskerk homestead was erected late in the seventeenth century or early in the eighteenth century and the plot in question must have been used for burial purposes prior to the year 1800, because a witness speaks of two graves therein, marked by tombstones bearing inscriptions which showed that the deaths occurred in the eighteenth century. Setting apart land for burial purposes, permitting burials therein and enclosing the land by fence, amounts to a dedication of the land and precludes the owner from exercising his former rights therein. Whether the land was thus dedicated by James Van Boskerk (who died in 1823), or by a former owner, does not appear; but it does appear by the recitals

in the will of James Van Boskerk that at its date, September 8th, 1823, the land had been so dedicated and was enclosed from his homestead lot by a fence and that he recognized such dedication. I have said that I think the intent to be gathered from his will is not to include the burial ground in the land devised to his son John and I also think that it was not the intention of said son John Van Buskirk (who died in 1869) to convey by his deed, dated March 20th, 1864, or to devise by his will, dated July 25th, 1864, the burial ground to his son John, Jr.; but if such was the intention of said testators and grantor, the wills and the deed could not accomplish such purpose, because of the dedication of the land for burial uses. Members of the Van Buskirk family and their friends and neighbors were buried in the cemetery, the last interment being in 1886, so that for at least ninety years the cemetery was used for the purpose for which it had been dedicated. It contained a vault and the separate graves were marked with stones and its use for the purpose for which it was dedicated was open and notorious and was known by everyone through whom the defendant claims title. James Van Buskirk (who died in 1823) recognized, by his will, the setting apart of the enclosed tract for such purpose; his son John (who died in 1869) was buried therein and in his lifetime gave similar recognition by the recital in his deed to his son John, Jr., and by his will. The wife of John Van Buskirk, Jr. (who conveyed to Fuller) was buried there, although her body was removed in 1890 or 1891, and by his deed to Fuller John Van Buskirk, Jr., recognized the existence of the cemetery, because that is what his deed specifically purports to convey. John Van Buskirk, Jr., did nothing to interfere with the use of the cemetery as such until he attempted to convey to Fuller in 1905, and if he claimed to be the owner thereof from the time of the conveyance to him in 1864, he exercised no act of ownership and did nothing to indicate an adverse possession against others having rights therein. He could not hold adversely against the dead, whose right to a last resting place is guarded and protected by the law,

but rather the dead hold adversely to him and to those claiming under him. Nor can there be an abandonment of the burial ground until the bodies therein are removed under proper authority, and it continues to retain its character as a place of sepulchre until such removal is effected. There have been no interments in the burial ground for nearly fifty years and for many years the plot has not been cared for; but since 1905 the fault is that of the defendant who closed all avenues of approach to the place and refused access to those who might care for and preserve its character.

I conclude that the right of burial in the cemetery still exists and extends to the descendants of James Van Boskerk (who died in 1823) for themselves, their relatives and such friends, whose surviving relatives may desire permission to inter there and that all living Van Boskerk descendants and relatives and friends of those whose bodies are interred in the cemetery have the right to visit this final resting place of their dead, for the purpose of maintaining, caring for and protecting the remains, the graves and the grounds and are entitled to free ingress and egress to and from the public street or road nearest the cemetery over the lands owned by the defendant which surround the cemetery. The defendant will be enjoined from disturbing, altering or destroying the burial ground and from interfering with access by complainants to and upon the cemetery. If the manner of access cannot be agreed upon by the parties, application for that purpose may be made to me.

For the information of counsel, I will say that in reaching my conclusions I have been guided by the ·following authorities:

*Wormley* v. *Wormley (Ill., 1904), 3 L. R. A. (N. S.) 481; Roundtree* v. *Hutchinson (Wash., 1910), 27 L. R. A. (N. S.) 875; Hines* v. *State (Tenn., 1911), 42 L. R. A. (N. S.) 1138,* and notes appended thereto.