SCHROEDER, Appellant, vs. MOELEY, Respondent.

*December 14, 1923—January 15, 1924.*

*Easements: Permissive user: Adverse user: Evidence: Sufficiency: Payment of taxes by owner of servient estate: Maintenance of gates: Parties: Non-objecting owner.*

1. The open, notorious, continuous, and exclusive use of a road across adjoining property for twenty years gives rise to a presumption that such easement was adverse in its inception and continuance.   p. 492.

2. In the absence of agreement, the burden of paying taxes on a right of way is on the servient owner; and therefore the fact that the owner of land across which a right of way was claimed paid the taxes on the entire farm, including the right of way, was immaterial in an action to establish the right of way by prescription, as was also the fact that gates were maintained at either or both ends of the road.   p. 493.

3. In an action to establish a right of way across adjoining property, another owner, over a corner of whose farm the way passed, but who does not here dispute plaintiff's right, was not a necessary or proper party defendant, since under sec. 2610, Stats., the court might either determine the controversy between the parties before it without prejudice to him or save to him such rights as he might have, or order him brought in.   p. 493.

APPEAL from a judgment of the circuit court for Sauk county: E. W. CROSBY, Judge.   *Reversed.*

This action involves a right of way.   For more than twenty-five years prior to this action plaintiff owned and occupied a farm of 380 acres in said county, no part of which abuts upon a public highway.   He purchased the same from his father, Peter Schroeder, Sr., who had owned and occupied it for many years.

Plaintiff here asserts a right by prescription to travel by foot and vehicles from a point on his south line near his buildings across defendant's farm on the north slope of a ridge and in a southeasterly direction to the public trunk highway No. 60, running from Spring Green to Sauk City and crossing defendant's farm near his buildings, this

claimed right of way being called herein the "west road." Defendant denies such right and asserts plaintiff is limited, in reaching the highway, to another, called here the "east road," which is substantially parallel with and about one quarter of a mile from the "west road" and on the south slope of the same ridge on defendant's farm. Defendant's farm was purchased by one Robert Riches from the Warren family in December, 1873. At that time it was being farmed by a tenant, Kammers. About 1887 Robert Riches moved onto it and occupied a residence about where defendant's residence now stands and the family lived there until Robert Riches' death in 1892. Shortly after that John Riches, a son,. acquired it by purchase, but seems never to have lived on it, his own residence being near. He sold in 1914 to the defendant here. During the period of his ownership John Riches worked a part of the farm south .of the trunk highway and built a barn in 1910 near the south end of the ".west road." Defendant added to this barn in 1914 or later. The part north of the trunk highway and crossed by both the east and west roads was farmed by tenants: from 1901 to 1908 by one William Paepke, and from 1910 to 1914 by Conrad Nolden.

About 1877, when Robert Riches moved on to his farm, and when Peter Schroeder, Sr., built the present buildings near the southwest corner of plaintiff's farm, Riches and Schroeder made some arrangement by parol by which permission was given by the former to the latter to lay out and thereafter use the "east road" and the same has been since used by the two Schroeders.

The testimony on plaintiff's behalf was substantially as follows:

Jake Kammers, sixty-one years old, lived on defendant's farm more than fifty years ago and for four years with his father, a tenant of the then owners, and prior to the sale in 1873 to Robert Riches. He testified that at that time the "west road," located as now claimed by plaintiff, was used

by the elder Schroeder to reach the highway and for ordinary farm purposes. He saw it so used and used it himself. There were then no gates at either end and he knew of no other exit being then used.

Plaintiff, forty-seven years old, lived substantially all his life on this farm, having received it from his father as early as 1896. He testifies to a continuous and open use of this way for teams during his ownership and prior thereto as far back as forty years; that he never asked permission of the former owners of defendant's farm and never received any. That for many years he kept his mail box on the trunk highway near the end of this road. That a gate was placed at the upper end on his south line fence and has been maintained by him for all of twenty-seven years. That a fence was built on defendant's farm alongside the west road about twenty years ago and the same is still there.

William Paepke, forty-seven years old, was first on defendant's farm in 1894 and stayed there for two years working for John Riches. He testifies that there were gates at the north and south ends of this "west road" and that the "west" and the "east" roads were both then used by the Schroeders. He later rented this portion of Riches' farm for about eight years from 1901. He built the fence above mentioned about 1902 and saw wheel tracks there then. That during his tenancy the ·Schroeders used the "west road" for carrying milk or cream and to collect the mail. That both roads were used, but the west one the more. That he gave no permission to *Schroeder* for such use.

William Seitz, fifty-six years old, lived on a farm just west of plaintiff's, exchanged labor with the Schroeders during threshing times, and knew of the "west road" being used for farm purposes over a period of thirty years.

Conrad Nolden, thirty-seven years old, worked on defendant's farm for a year in 1901 or 1902, and helped build the fence alongside the "west road." He was a tenant for four years from 1910, and helped John Riches build the

barn during one summer. During these periods plaintiff used the west road to drive to town and to church. The east road was also used.

Three brothers of this Nolden, who had been at times employed on defendant's farm, also testified as to plaintiff using the "west road."

There were other witnesses also as to such use.

On defendant's behalf he called one Tooley, fifty-seven years old, who, in 1903 or 1904 for one winter's season, cut poplar from the woods west of this west road. During this period he saw no use made by *Schroeder* of the west road, but neither did he see *Schroeder* use the east road, and did see that the west road had at some time been traveled. In 1909 he bought a farm west of plaintiff, but never during the last thirteen years saw plaintiff come out of the west road, and during that thirteen years had only seen plaintiff on the east road "several times."

George Fuchs was United States mail carrier and as such traveled the trunk highway from 1903 to 1920 about nine times per week at the hours of 9 a. m. and 2 p. m. That up until 1916 or 1917, the time a factory was built near the trunk highway a little to the west of the "west road," he had seen plaintiff come out on the east road. That after the factory was built he saw plaintiff come out on the west road. But his testimony is also that he did not know of or remember any use by *Schroeder* of the west road before such building and did not know of there being such a road.

Chris Kindschi was town assessor from about 1900 to 1911. He visited plaintiff's farm once a year during that period and went up and down the east road and knew nothing of the west road.

Andrew Gruber was assessor from 1914 to 1919, and in visiting plaintiff's farm annually went up the east road.

Henry Lodde, town clerk for about thirty years, living one and one-half miles away, had seen defendant's farm forty or fifty times during the last thirty years; saw plaint-

iff during that period twice come out of the east road and first heard of the west road in 1919 or 1920.

Samuel Babington, seventy-six years old, town chairman for fourteen years, lived for forty-one years five miles southwest of this farm, passing it about three times a week, being in the creamery business with a factory near there. He knew of plaintiff's father on the farm fifty-five years ago and of the buildings on that farm for over forty years and had seen the east road used many times; that before the time of the east road there had been a road used by plaintiff's father to the northeast. On direct examination he testified that before the Riches owned it (December, 1873), and in referring to plaintiff's farm, that there was "no road only that west one they came over, it was a winter road, they used to drive teams through there at that time." That is more than fifty years ago. That he has not seen teams on the west road for over forty years. That he has seen the east road used from twenty to fifty times in the last fifty years.

One Accola worked for the defendant on the farm for about eight months in 1914 and saw no use made of the west road. On cross-examination, however, he testified as to having driven through the road with a team to the plaintiff's buildings in 1914 and knew of the gate at its north end.

John Riches, defendant's predecessor in title, sixty years old, son of Robert Riches, testifies that before the laying out of the "east road" the Schroeders had gone out to the highway easterly along their south line. He testifies that there were no tracks on the west road; no use whatever made of it by the Schroeders, and that their travel was always on the east road. That he never at any time saw plaintiff use the west road. He gave as a reason for the laying out of the east road that the Schroeders had no other way out than on their south line. That he never gave any permission to *Schroeder* to use the west road, nor so far as he knew did

his father. That he paid taxes during his ownership of it on the entire tract.

*Walter Moeley,* the defendant, knew of the farm only since his purchase in 1914 and had paid taxes continuously thereon.

On rebuttal, one Van Behren, twenty-two years old, worked for defendant in 1916 to 1917 and saw plaintiff then use both the east and west roads.

Plaintiff in rebuttal and on cross-examination by defendant's counsel testified that he had made up his mind to get rights superior to Riches' quite a number of years ago and that he thought during this time he had a right to the way.

Defendant also testified that in the fall of 1921 plaintiff made claim of right to this west road.

Just before reaching the highway the "west road" leaves defendant's farm and cuts across a corner of land belonging to one Kleinert, who was not a party here.

In 1917 defendant objected to plaintiff's use of this west road, but gave him permission to do so on one special occasion. In 1921 negotiations were had for the possible purchase of a right of way either along the west road or elsewhere. Such negotiations failing, plaintiff petitioned the town board, under sec. 1275, Stats., to have the west road widened beyond the one-rod width. After a hearing the board decided to drop the matter.

The plaintiff gave evidence of the "east road" being subject to washouts and being impassable at times.

Defendant's answer denied plaintiff's assertions as to the west road; alleged permission given in 1917 until 1921 and the proceeding before the town board. Defendant also offered to secure plaintiff by proper writings in a two-rod right of way along the "east road."

By counterclaim defendant alleged a trespass by plaintiff and prayed that plaintiff be restrained from using the west road, but making no claim for money damages.

The court made findings which, so far as material here, are in substance as follows:

7. That the "east road" has been used by the plaintiff and his predecessor in title for upwards of forty years as and for a right of way to the main highway.

8. That Peter Schroeder, Sr., laid out and improved the said "east road" given him by Robert Riches.

9. That in 1917 the defendant gave to the plaintiff permission to cross over defendant's land on the "west road."

10. That prior to defendant's possession in 1914 of his farm his predecessors in title for forty years back have been in open, adverse, and notorious possession and were seized thereof in fee simple and paid the taxes thereon during all of said time, including the strip within said "west road."

11. That a portion of the "west road" crosses over land held and owned by one Kleinert and that no proof was made of any permissive and adverse use of any lands owned. or held by said Kleinert.

12. That all of the use made of the "west road" was a permissive use; that is to say, used by and with the consent and permission of the defendant and his predecessors in title as an accommodation to the plaintiff.

(After the findings were signed the counsel and court had some correspondence, found as a part of the record; the trial judge in substance saying that he meant to find as to the "west road" that the only permissive use plaintiff had was that given him by defendant in 1917; that there is no doubt this "west road" has been used by *Schroeder* on different occasions, but that such use was not within the knowledge or consent of the former owners but was mere friendly permission by the renters.)

13. That the plaintiff did not commence any adverse use of this "west road" until October, 1921.

14. That plaintiff never made any repairs, constructed any fences, paid any taxes, or did anything whatsoever to maintain this "west road."

15. That plaintiff attempted to purchase of defendant a right of way along the "west road" in 1921.

16. That defendant in the fall of 1921 withdrew the permissive use which he had given the plaintiff in 1917.

17. That the defendant has been damaged by the acts of plaintiff in connection with the so-called "west road" in the sum of $50.

As conclusions of law the court declared as follows:

1. That the only easement, right of way, or highway across defendant's farm is the "east road."

2. That the plaintiff has no easement, prescriptive or otherwise, over the "west road."

3. That the said Kleinert is a proper and necessary party to the action set forth in plaintiff's complaint, that no relief can be granted thereunder and the complaint should be dismissed.

4. That defendant is entitled to the relief sought in his counterclaim and be granted a perpetual injunction restraining plaintiff and his successors in title from crossing over defendant's lands except over the "east road."

5. That the defendant recover $50 as damages from plaintiff.

From the judgment entered thereon dismissing the complaint, awarding defendant $50 damages and an injunction against the plaintiff, with costs, plaintiff has appealed.

For the appellant there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale.*

*E. C. F. Meier* and *F. R. Bentley,* both of Baraboo, for the respondent.

ESCHWEILER, J. The trial court apparently reached the conclusion that plaintiff had an absolute easement over the defendant's land to the public highway by the "east road" by reason of forty years' user of the same. Yet such user was found to be, and it was conceded by plaintiff to have been from its beginning, based upon express permission to that effect given by the then owner of the servient estate, Robert Riches, to the then owner of the dominant estate, Schroeder. Its continued use was upon continued permis-

sion, and while so used title by prescription or adverse user could never arise. The continued forty years' user of the "east road" left plaintiff with no better or firmer title to it as an easement than his father and predecessor in title had the day after the permission was given and the user commenced.

The permission here shown as to the "east road" was a continuing bar to the possibility of a title by prescription. *Wiesner v. Jaeger,* 175 Wis. 281, 184 N. W. 1038; *Schmoldt v. Loper,* 174 Wis. 152, 182 N. W. 728. Neither could such conclusion by the court as to the "east road" be based upon the offer by defendant to give plaintiff written consent to such easement or by any tender of such writing, because the plaintiff did not accept thereof.

When the plaintiff rested his case, the evidence on his behalf showed that for more than twenty years preceding defendant's purchase of the farm in 1914 there had been open, notorious, continuous, and exclusive use for ordinary farm travel of the "west road" by the plaintiff and his predecessor and their respective families. That for more than twenty-five years it had not been permissive was directly testified to by plaintiff and by John Riches, defendant's predecessor. At the end of twenty years of such continuous possession of an easement the presumption arises that it was adverse in inception and continuance. *Carmody v. Mulrooney,* 87 Wis. 552, 58 N. W. 1109; *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103; *Wollman v. Ruehle,* 100 Wis. 31, 35, 75 N. W. 425; *Bishop v. Bleyer,* 105 Wis. 330, 333, 81 N. W. 413; *Meyer v. Hope,* 101 Wis. 123, 125, 77 N. W. 720; *Perkins v. Perkins,* 173 Wis. 421, 426, 180 N. W. 334, 181 N. W. 812. The defendant's testimony having failed to overthrow such presumption—in fact having strengthened it,—the title became absolute in plaintiff before defendant purchased in 1914.

That the taxes were paid on the entire farm including this "west road," and apparently the "east road" as well,

was entirely immaterial.  Such burden, in the absence of agreement to the contrary, rests upon the servient rather than the dominant estate.

That gates were maintained at either end or both ends is also entirely immaterial.  *Gimbel v. Wehr,* 165 Wis. 1, 13, 160 N. W. 1; *Dyer v. Walker,* 99 Wis. 404, 75 N. W. 79; *Wille v. Bartz,* 88 Wis. 424, 60 N. W. 789; *Whaley v. Jarrett,* 69 Wis. 613, 34 N. W. 727.

By the eleventh finding the court declared that no proof was made of any permissive and adverse use of the lands belonging to Kleinert and across a small corner of which the "west road" passed.  By the third conclusion of law it was held that Kleinert is a proper and necessary party to the action, that no relief can be granted under the complaint, and that it should be dismissed.

The plaintiff did not elect to make Kleinert a party. If Kleinert conceded plaintiff's right or interposed no objections to plaintiff's crossing his corner such as were interposed by *Moeley* as to his land, it would have been unnecessary and improper for plaintiff to make Kleinert a party to this litigation.  Defendant *Moeley* at no time moved the court to have Kleinert made a party, but takes the position, unsupported by citation of any authority, if any such can be found, that because Kleinert is not a party no relief can be given as against *Moeley.*

Under sec. 2610, Stats., the court might do these things: determine the controversy between the parties before it without prejudice to possible rights of Kleinert; or, determine the issues as to the parties before it and save to Kleinert such rights as he might have; or, if Kleinert's interests require protection, then, as the statute reads, "the court shall order" him to be brought in.

The apparent disposition of the case as to this feature of it was therefore wrong.

We can find no basis in the record for the granting of $50 as damages to the defendant on his counterclaim, for

no damages were asked or shown.   The counterclaim, from what has been determined, must of course be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff.

Rosenberry, J., dissents.