CARPENTER–UNION HILLS CEMETERY ASSOCIATION, a Not-For-Profit Corporation, and Mary Lindsey, Plaintiffs-Respondents,

v.

CAMP ZOE, INCORPORATED, Defendant-Appellant.

No. 10090.

Missouri Court of Appeals, Springfield District.

Feb. 8, 1977.

Richard D. Moore, Moore & Brill, West Plains, for defendant-appellant.

Jerry L. Wilkerson, Ball & Wilkerson, Salem, for plaintiffs-respondents.

FLANIGAN, Judge.

In this action plaintiffs sought, and the trial court granted, an injunction permanently restraining defendant "from obstructing, barricading, or in any other way interfering with" plaintiffs' use of a certain road, referred to in the record as the Green Road. Defendant appeals.

Appellate review of this non-jury action is governed by Rule 73.01 V.A.M.R. as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The Green Road affords access from Highway 19, in Shannon County, Missouri, to a cemetery "known variously as the Carpenter-Union Hills Cemetery or the Union Hills Cemetery." Plaintiff Carpenter-Union Hills Cemetery Association is a Missouri not-for-profit corporation organized to maintain the cemetery. Plaintiff Mary Lindsey has relatives buried in the cemetery, as do several officers and members of the corporate plaintiff.[1]

The petition alleged that the defendant owned the "Northwest Quarter of Section 8, Township 30 North, Range 40 West" in Shannon County, Missouri, except a three-acre tract on which the cemetery is located. The answer admitted that the defendant owned the northwest quarter of Section 8. The evidence showed that the cemetery is located in the west half of the *northeast* quarter of Section 8, thus lying some distance east of defendant's land. Section 5 is located north of and adjacent to Section 8. Highway 19 runs generally north and south through Section 7 which is located west of and adjacent to Section 8.

The Green Road, for the purpose of describing it, may be considered as consisting of five segments. Segment I commences in Section 7, at a point where the Green Road intersects Highway 19, and proceeds easter-

ly approximately 200 feet to the west line of Section 8, which line is also the western boundary of defendant's land. Segment II commences at that point and proceeds northeasterly across defendant's land and ends at the north line of Section 8, which line is defendant's northern border. Segment III commences at that point and continues northeasterly into Section 5, then easterly, then southeasterly to a point on the north line of Section 8 where it reaches the northern boundary of defendant's land. From that point Segment IV runs southerly or southeasterly across defendant's land to defendant's eastern border. Segment V commences at that point and runs easterly to the cemetery.

It will be observed that only two of the segments (II and IV) run across the land of defendant. The owner of the land across which Segment I runs was not identified, although one witness thought "it belongs to the federal government." Segment III runs across land owned by Leo Dry. The ownership of the land across which Segment V runs is not made clear by the record.

In 1970 or 1971 defendant erected a gate across the Green Road at the west end of Segment II. In 1974, defendant locked the gate, thereby precipitating this action.

The petition advanced several theories on which plaintiffs predicated their claim to a right to use the Green Road for access to the cemetery from Highway 19 and to injunctive relief against defendant's interference therewith. One theory was that plaintiffs had acquired an easement by prescription. Other theories included "adverse possession," "dedication," and the establishment of the Green Road as "a legally established road" by reason of the expenditure of public money or labor pursuant to § 228.190 RSMo 1969, V.A.M.S.

The trial court found, among other things, that no roadway other than the Green Road "reaches the cemetery from Highway 19." However, the trial court did

---

1. Defendant's appellate brief states that plaintiff Mary Lindsey's "interest in the cemetery is similar to that of the members of" the corporate plaintiff.

not state specifically which theory or theories it adopted in granting plaintiffs the injunction. If plaintiffs were entitled to relief on the theory that they had an easement by prescription, the validity or invalidity of other possible theories need not be explored. *Guerin v. Yocum*, 506 S.W.2d 46, 47[2] (Mo.App.1974).

■ To sustain a claim to an easement by prescription the plaintiffs must prove four essential facts. They are: (1) the user was for the prescribed period;[2] (2) the user was adverse; (3) the user was under a claim of right; and (4) the owner had notice of the user, and of its character and of the claim of right. *Roberts v. Quisenberry*, 362 Mo. 404, 242 S.W.2d 26, 28[2] (1951).

Defendant's first appellate contention, the invalidity of which is dispositive of this appeal and requires affirmance, is that the evidence is insufficient to show acquisition of an easement by prescription because: (a) "the user was not presumptively adverse and plaintiffs did not introduce any evidence to show that the user was adverse"; (b) even if the user was presumptively adverse, defendant offered evidence [to be detailed later in this opinion] which rebutted the presumption; (c) even if plaintiffs did introduce evidence of adverse user, it was not "clear and convincing evidence" because an alternative access road existed at the time of the initial use of the Green Road and because defendant had and has "no objection to the use of the Green Road for access to the cemetery."

Plaintiffs' evidence was presented by ten witnesses and included an aerial photograph of the general area, showing the cemetery, the Green Road, and Highway 19. Other photographs showed the various segments of the Green Road. The Green Road, plainly visible, appears from the photographs to be well traveled. Portions of it seem to be graveled. It goes through some land which is fenced and passes by some buildings. Some portions of it seem to pass through wooded areas but other portions pass through areas which have been cleared. The cemetery is a large one. Many prominent headstones are there, some of recent vintage, and at least one bears an inscription indicating it was placed there in 1902. Photographs demonstrate that the cemetery has been well kept.

Photographs introduced by the defendant also show many of the features enumerated in the preceding paragraph. Defendant's land, since 1928, has been used as "a private summer camp for boys and girls" and is operated under the name of "Camp Zoe."

Plaintiffs' witnesses, most of them elderly, gave testimony to the effect that the Green Road had been used extensively and continuously by "lots of people" for many years. One witness said it had been in use since she was eight years old and she was 78. Wagons, teams of horses, cars, and pickup trucks used it over the years. The Green Road was used for access to the cemetery before Highway 19 was built in the middle 1920's. None of plaintiffs' witnesses had ever asked permission from anyone to use the road—"I did not feel I needed to, no one ever tried to stop me." The witnesses had relatives or in-laws buried in the cemetery and they visited the cemetery with frequency by using the Green Road from Highway 19.

One of the witnesses for plaintiffs was Joe Thompson, age 80, who, from 1944 to 1949, owned some of the land on Segment IV now owned by the defendant. The Thompson place was "next to the cemetery." No one ever asked him for permission to use the Green Road and it had been

---

**2.** The prescribed period is 10 years. *Guerin v. Yocum*, 506 S.W.2d 46, 47[3] (Mo.App.1974); *Speer v. Carr*, 429 S.W.2d 266, 268[2] (Mo. 1968).

Section 516.010 V.A.M.S. is the ten-year statute "for the recovery of any lands, tenements of hereditaments, or for the recovery of the possession thereof." In *Boyce v. Mo. Pac. R. Co.*, 168 Mo. 583, 68 S.W. 920, 922 (1902) it is said: "[W]hile statutes of limitations do not directly apply to actions in which easements or other incorporeal hereditaments are involved, still by judicial construction an adverse user of an easement for the period specified in the statute, barring action for the recovery of lands, is now by analogy held to be a conclusive judicial presumption of a prescriptive right by a lost grant."

in use, to his knowledge, since 1904. Over the years he has used it "every two or three weeks."

Another witness for plaintiff had lived on the Thompson farm from 1939 to 1943. She testified that the Green Road to her knowledge had been used since 1933, that no one had ever asked permission to use it, and that all types of vehicles used it "lots and lots of times a year." Another witness had lived at a house along the Green Road in 1937 and gave similar testimony concerning extent of use. Prior to the erection of the gate and the later locking of it by defendant, there had been no interference with the use of the road.

From *Miller v. Berry*, 270 S.W.2d 666 (Mo.App.1954) may be extracted basic principles, supported by numerous authorities there cited, applicable to the acquisition of easements by prescription. They include the statements contained in the following paragraph.

■ The burden is upon the plaintiffs to show the various elements, "the four essential facts," by clear and convincing proof. However, *in the absence of some showing that the use was permissive in its origin*, it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the statutory period, the burden is cast upon the land owner to show that the use was permissive, rather than adverse, if the land owner claims that it was permissive. Mere use of a passage over another's land for a long time with his knowledge is not necessarily an adverse use and *if* it is permissive in its inception, such permissive character, being stamped on the use at the outset, will continue of the same nature and no adverse user will arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature. Mere permissive use of land cannot ripen into an easement.

■ " '[B]ut the use of the land is adverse, as against the owner, *if it is not made in subordination to him*, is open and notorious and is not[3] wrongful as to him. * * * "Adverse," under the definition, means that the one making the use "shall not recognize in those as against whom it is claimed to be adverse an authority either to prevent or to permit its continuance. It is the non-recognition of such authority at the time a use is made which determines whether it is adverse." ' *Jacobs v. Brewster*, 354 Mo. 729, 190 S.W.2d 894, 897, 899. See also 25 Am.Jur.2d Easements and Licenses § 51, p. 460; Restatement of the Law of Property, §§ 457, 458." *Benson v. Fekete*, 424 S.W.2d 729, 738[2] (Mo. banc 1968). (Emphasis supplied)

Defendant's evidence, most of which was in direct conflict with plaintiffs' evidence, was to the effect that the Green Road did not appear on maps printed by the U. S. Geological Service in 1945 and in 1967. At times the Green Road fell into conditions of disrepair. A portion of it (apparently on Segment III) was bulldozed by the defendant in 1968. One of defendant's witness said that in 1967 the Green Road was impassable by any kind of vehicle. One witness, who had owned defendant's land from 1928 to 1967, said that he was not aware of the existence of the Green Road, at least Segment III of it. Access to the cemetery had been gained, he said, by use of the Blue Road which intersected the Green Road in Segment II and ran across the northern portion of defendant's property to the vicinity of the cemetery. This witness said, "I don't know anything about the green road, nothing at all." One of defendant's exhibits described Segment III as having been "built by Camp Zoe in 1968."

Testimony was elicited from other witnesses for the defendant to the effect that Segment III and Segment IV of the Green Road were non-existent or were little used. However, some of defendant's witnesses admitted that defendant had bulldozed and graded a portion of Segment III; that Segment III and Segment IV did exist; that

**3.** sic

the Green Road never became impassable and that it "was always there and from time to time people used it." One of defendant's witnesses admitted that he had used the Green Road in 1925 and in the late 1930's and in the 1940's. Another defense witness had taught at a school located near Segment III and said that the Green Road was used for access to the school. Another school house was located near Segment V and the Green Road was used to get to it.

The manifest conflicts in the testimony were resolved by the trial court in favor of the plaintiffs and its findings are amply supported by witnesses whom the trial court, unlike this court, was in a position to observe. The trial court found that Segment II and Segment IV constituted "only a small portion of the Green Road" and, as indicated, they were the only segments lying on defendant's land. Although the evidence may have fallen short of showing the Green Road to be "a legally established road" under § 228.190 V.A.M.S., there was testimony that the county had on occasion provided a road grader for use on the Green Road and had installed a "tin horn" on Segment V.

The three prongs of defendant's contention must now be considered. Although defendant tacitly concedes that plaintiffs' evidence showed an open, continuous, visible and uninterrupted use of the Green Road for the prescribed period, defendant says "the general rule does not apply to unenclosed[4] rough woods, brush, prairie, or waste land." Defendant relies on certain cases, including *Cook v. Bolin*, 296 S.W.2d 181 (Mo.App.1956) and *Burnett v. Sladek*, 251 S.W.2d 397, 398 (Mo.App.1952). Those cases, and others cited by defendant, are factually distinguishable. The land involved in *Cook* was described as "wild, unfenced, open woods." The land in *Burnett* was described as "wild, rough land . . [not used] for [either] cultivation or pasture."

One authority refers to "an exception to the presumption of prescription where the land in question is rural, wild and uninclosed. There the theory of mere neighborly accommodation refutes the presumption of adverse use." Thompson on Real Property (1961 Rep.) Vol. 2, § 350, p. 305. The same authority concedes, on p. 307, that "a prescriptive right-of-way may, however, be acquired over uninclosed and uncultivated land."

In *Moravek v. Ocsody*, 456 S.W.2d 619 (Mo.App.1970) it was held that the trial court properly granted plaintiffs a mandatory injunction requiring defendants to remove a gate from across a roadway over defendants' land and a permanent injunction against obstruction of the roadway by defendants. Defendants asserted that their land in 1937 was "marginal land," "nine-tenths timber with the rest overgrown with brush and sprouts." Defendants further asserted that in 1958 only one-seventh of their land was in cultivation. Accordingly, argued defendants, there was a presumption that the travel over their land was initially permissive. At p. 624 the court said:

"There is authority for the proposition that an easement by prescription cannot be acquired over unfenced and unoccupied lands which are parts of vast areas of undeveloped territory. In these instances such use is rarely, if ever, brought to the actual notice of the owner of the land, and because of the nature of the land no presumption of notice of user should arise therefrom. Likewise, if there be actual notice of user and no objection thereto by the owner it would seem the more logical and just to indulge in a presumption that such use was permissive. See *Schroer v. Brooks*, 204 Mo. App. 567, 224 S.W. 53, l. c. 56." However, the court said the principle was not applicable there because defendants' land was located "in a well settled county, and not part of an extensive, unimproved, uninhabited area."

---

4.  See 46 A.L.R.2d 1140, Acquisition by user or prescription of right of way over unenclosed land.  See also 170 A.L.R. 776, 820, § VI(b).

**202**

In *Cramer v. Jenkins*, 399 S.W.2d 15 (Mo. 1966) the court upheld plaintiff's claim to an easement of right of way over land owned by the defendant. Defendant argued that plaintiff's use was permissive because when that use began in 1919, defendant's land was "in prairie grass, unenclosed, not farmed by the owner and that anyone could cross it at any point." The court, in rejecting defendant's argument, said at p. 18:

"Plaintiff also cites such cases as *Burnett v. Sladek*, Mo.App., 251 S.W.2d 397, discussing ways used through unenclosed lands, especially woodland, only occasionally used and not always by the same route; and *George v. Crosno*, Mo.App., 254 S.W.2d 30, where the owner kept gates across the way which were opened and shut by users. Even though some of this land was swampy, nevertheless the ground along the drainage ditch appears to have always been a good place for a road and that was its location throughout the entire period. There were visible markings of the roadway and plaintiff worked it 'with the blade on the back of a Ford tractor.' Moreover, plaintiff used this way for the statutory period after the land owned by defendant was being cultivated. Furthermore, defendant's land was not unsettled territory being only about one mile from the town of Dawn and on its west line was the county road between Dawn and Utica."

■ Here there can be no doubt that defendant and its predecessors in title, who have been in active possession of Camp Zoe

since 1928, had actual notice of the user of the Green Road and had never voiced objection thereto. Permission to use the Green Road had never been solicited, granted, or denied prior to the conduct sought to be enjoined. For over 70 years the Green Road has existed and its location has not changed. Maintenance work has been done on it with county equipment, and even the defendant, although denying through some of its witnesses the existence of Segment III, has worked on that segment.

■ This court finds that the "wild land" exception, upon which defendant relies, is not factually applicable. Most, if not all, of the testimony with regard to wild lands was elicited from plaintiffs' witness on cross examination. These witnesses, however, made it clear that their use of the term "wild land," which was undefined by the questioner, referred to the land on Segment III which, of course, was not on defendant's land. Segment III was on land owned by Leo Dry[5] who was not a party in this action. Apparently Dry had not interfered with plaintiffs' use of the Green Road and whether that use, with regard to Segment III, was by express grant, by prescriptive right, or otherwise, does not appear in the record and is not material to the issues in this action.[6]

The record supports the finding that if the land here properly may be described as "wild land" within the meaning of the exception under discussion, it was the land of Leo Dry and not the land of defendant. Moreover, the adjacency to the Green Road

---

**5.** One of *defendant's* witnesses testified: "Mr. Dry's land was forest land under management, I don't like the word 'wild.'"

**6.** 28 C.J.S. Easements § 109, p. 802; *County of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986, 989[4] (1968); *Marshall v. Winter*, 250 S.C. 308, 157 S.E.2d 595, 597[6] (1967); *McNeil v. Kennedy*, 88 W.Va. 524, 107 S.E. 203, 204[1] (1921); *Schroeder v. Moeley*, 182 Wis. 484, 196 N.W. 843, 847[5] (1924); Anno. 28 A.L.R.2d § 3, pp. 409, 414.

In *McNeil*, 107 S.E. at p. 204, it is said: ". . . [T]he bill makes no allegations against the absent parties; nothing is alleged against them, if present, upon which to base any relief; they are not alleged to be obstruct-

ing the right of way; according to the bill the defendant is doing that, and he for his acts, and not for others, is liable to the injunctive process for invading plaintiff's rights. The fact that said right of way runs through their lands as well as that of defendant, does not make them necessary parties. Plaintiff is seeking not to have a right of way established through anybody's lands; the bill refers to and alleges a right of way established and existing for more than ten years, appurtenant to plaintiff's land, by prescription and user, which defendant is alleged to be obstructing and in which he is sought to be enjoined."

of farm homes and buildings, two school houses, a hay field, the cemetery itself, fenced areas, and at least one large cultivated field, coupled with defendant's own continuous operation of Camp Zoe since 1928 and the extensive use of the Green Road, justify the finding that the general area was sufficiently developed that the "wild land" exception does not come into play.

Finally, it is important to keep in mind the motives of plaintiffs and others similarly situated in using the Green Road. Their purposes included the burying of their dead and the tender and meticulous care of their places of eternal repose. Can it be reasonably argued that such purposes, faithfully executed for so many years without let or hindrance from anyone, were being attained *in subordination to* an authority on the part of defendants to prevent or to permit their continuance? Anyone embracing such a concept utterly underestimates the devotion of bereft Missourians to the memory of their loved ones and their resolution to insure the proper maintenance of their graves.[7]

Prong (a) has no merit.

In prong (b) defendant argues that "there is some evidence that the user was, initially, permissive." Then defendant says "there is admittedly little evidence bearing on this point." A more accurate statement, based on this court's examination of the transcript, is that there is *no* evidence that the user was initially permissive.

■ Next defendant argues "there was an alternative county road leading to and beyond the cemetery at the time the Green Road was first used, and for several years thereafter." Contrary to defendant's factual assertion, there was no evidence that the "alternative county road" (referred to in the transcript as the Red Road) existed at the time user of the Green Road commenced. The Red Road was abandoned in the late 1940's. It approached the cemetery from the south and use of it entailed fording a creek. Moreover, there is authority for the proposition that where a proper user is shown, questions of the necessity of the passway are immaterial, and it is of no consequence that the parties claiming the easement had access to another way, even though it was equally convenient.[8]

Prong (b) has no merit.

■ What has been said with respect to (a) and (b) undermines some of prong (c). But defendant argues that it "never objected to [plaintiffs] using the Green Road to reach the cemetery." In support of that assertion defendant refers to the testimony of one of its witnesses concerning a key being left at the store operated by the witness. Indeed the witness, when asked if the key had been left at his store, responded, "I wouldn't want to swear to that." There was no evidence that plaintiffs were informed of the key or of its availability.

■ Self-serving protestations that defendant has no objection to plaintiffs using the Green Road are inconsistent with defendant's conduct in erecting the gate and locking it. Plaintiffs had acquired an easement by prescription to the unobstructed use of the road and defendant had no right to erect the gate or to lock it. *Huter v. Birk*, 510 S.W.2d 177, 183[8] (Mo.1974).

---

7. In view of this court's holding that the evidence justifies a finding that instant plaintiffs established an easement by prescription, it is unnecessary to decide whether there existed a right to ingress to and egress from the cemetery, a right not dependent upon acquisition by prescription. The curious may consult Jackson, The Law of Cadavers and of Burial and Burial Places, 2d Edition (1950), p. 374, note 78; 14 Am.Jur.2d Cemeteries § 37, p. 744; *Scruggs v. Beason*, 246 Ala. 405, 20 So.2d 774 (1945); *Nelson v. Randolph*, 222 Ill. 531, 78 N.E. 914 (1906); *Van Buskirk v. Standard Oil Co.*, 94 N.J.Eq. 686, 121 A. 450, 453[7] (1923); *Hines v. State*, 126 Tenn. 1, 149 S.W. 1058, 1059[1] (1911).

8. 28 C.J.S. Easements § 18a, p. 663. See also *Jenkins v. German*, 298 S.W.2d 486, 491[7] (Mo.App.1957), where it is said: "[W]e find no basis for obliterating the prescriptive right already vested merely because plaintiffs have another way available to them. We are not dealing with the right to use an easement of necessity." "[T]he element of necessity has no role in prescription." Thompson on Real Property, Vol. 2, § 335, p. 157 (1961).

There the court quoted with approval this language: "[U]nder modern conditions the better rule is that which prohibits the servient owner from erecting gates or bars across the road where the owner of the dominant estate has used said road uninterruptedly under an adverse claim of right for [the period of prescription], or more, without gates or bars." [9] Thus falls prong (c).

Defendant has not questioned the appropriateness of injunctive relief or the language of this specific decree.

The judgment is affirmed.

All concur.

HOGAN, J., disqualified.

---

9. See 52 A.L.R.3d 9 (Fence or Gate Across Right of Way).