ATTORNEY-GENERAL, EX REL. WILLIAM BLISS et al.,

*v.*

LINDEN CEMETERY ASSOCIATION et al. and ROSEDALE
CEMETERY ASSOCIATION et al.

[Argued May 26th, 1919.   Decided May 26th, 1919.].

1. A vendor's lien for unpaid purchase-money does not attach to lands sold to a cemetery association and devoted to burial purposes.

2. A vendor's lien for unpaid purchase-money on lands of a cemetery association not used for burial purposes is waived by the agreement of the vendor to accept payment out of the proceeds of the sale of burial plots.

3. The costs of administration of a receivership are entitled to priority of payment regardless of the liens and claims of the litigants in a cause.

On motion, &c.

*Mr. Abram H. Cornish,* for the complainants.

*Messrs. Vail & McLean,* for the defendants.

BACKES, V. C.

These cemeteries—Linden and Rosedale—have been administered by the receiver as a single trust. The receiver moves that his intermediate report be approved and that allowance be made to him for his operating expenses and services and for counsel fees to his counsel. There is no opposition, and his report is approved and the allowances asked for are granted. The receiver has not enough money to pay them and he will be permitted to borrow on his certificates to supply the deficiency.

The receiver has a balance on hand of, approximately, $2,500, and the controversy is over the use of this money toward defraying the administration expenses. One thousand, five hundred dollars of this represents ten per cent. of the appraisal of lands of the two cemeteries condemned by the Pennsylvania Railroad

Company and paid into court, and recently paid to the receiver. For the purpose of this decision it may be said that the remaining $1,000 represents ten per cent. of the proceeds of burial plots sold by the receiver. The representatives of Smith, the vendor of the lands to the cemeteries, claim that the receiver holds this balance in trust for them, that it is not available for the payment of the costs of administration, and they pray that it be awarded to them. They contend that ten per cent. of sales made by the receiver, or by the corporations if restored to control, is impressed with a trust in the nature of a vendor's lien, and that it was so declared by the court of errors and appeals in its opinion reported in *85 N. J. Eq. 501.* The appeals there under consideration were from decrees of this court striking out the second covenant in the deeds from Smith to the associations. By this covenant the associations promised

"To pay semi-annually in cash to said William F. Smith, his heirs, administrators, executors and assigns, one-tenth part of the gross proceeds of the sale, lease or loan of each burial plot or of any use thereof or interest therein made by said Linden Cemetery Association, party of the second part, from the land hereinafter conveyed to said association by this indenture."

The covenant was part consideration for the conveyances and was held to be void by this court because it violated the Cemetery act. The court of errors and appeals concurred but formulated an equitable substitute which it defined in its *remittitur* requiring this court "to ascertain what will be a reasonable sum to be paid to the grantor, or his assigns, for services and profit on the purchase and sale of said property, and their value to the grantee, less any credits to which the grantee is entitled. And that when such sum is ascertained it shall be treated as unpaid purchase price of the land until extinguished by payment in gross or by percentage from the price of lots, as provided in the said covenant, which covenant is declared to be extra-statutory solely because the amount to be paid to grantor was unliquidated."

In compliance, it has been determined that $51,914.07 is a reasonable sum to be paid by Linden and $28,419.20 by Rosedale. *90 N. J. Eq. 385.*

Claimants' counsel argues along the line that if these sums are "to be treated as unpaid purchase price of the land," as the appellate court decreed, vendors' liens are implied, and that, as the holders of such liens upon the land, the claimants have priority upon the proceeds of sales over the charges for administering the trust. I think he entertains too broad a view of his clients' rights. It seems to me that the vendor could have had no lien had this covenant been valid, and it is obvious that the court of errors and appeals in recasting it conferred no greater privileges than the vendor would have had had the covenant been statutorily lawful. Considering the rights of the vendor upon the hypothesis of a valid covenant, what were they? It is not questioned that in the ordinary case of sales of land where the purchase-money is unpaid the vendor has a lien. "It is well established in this court that where land is conveyed and the purchase-money for it is not paid, and no distinct security for the payment of that money is taken in its stead, a constructive trust arises, and the vendee is considered as the trustee of the land for the vendor until the purchase-money is paid. The vendor thus obtains an equitable lien upon the land for the purchase-money, which is good against the vendee and his heirs and all persons taking from them as volunteers, and also against purchasers from them for value with notice that the purchase-money is unpaid, and is unenforceable only against purchasers for value in good faith without such notice." *Action* v. *Waddington*, 46 *N. J. Eq.* 16. But here the vendor by conveying the lands to cemetery associations dedicated them to public use for the burial of the dead, and at least as to so much of the lands as is devoted to that purpose a lien could not attach. The trust in the vendees to the use of a public charity is repugnant to a use to the vendor. The very essence of a vendor's lien is that it follows the lands and is to be made out of the lands, and if the remedy is not available it is because the right does not exist. In *Spear* v. *Locust Wood Cemetery*, 72 *N. J. Eq.* 821, the vendor took a purchase-money mortgage and upon default sought to foreclose it. His contractual and legal position was much stronger than that of the claimants, but Vice-Chancellor Leaming held that the mortgage debt could not be recovered by a sale

of the lands devoted to burial purposes, because they were exempt from execution by section 8 of the statute concerning cemeteries. *Comp. Stat. p. 375.* This disposes only of the claim to so much of the funds in the receiver's hands as was derived from the sales of burial plots.

The $1,500 received from the Pennsylvania Railroad Company, in the condemnation proceedings of lands not appropriated to cemetery uses, stands on another footing. In the case last cited it was held that lands not alloted to cemetery purposes were not immune to levy and sale for the payments of the mortgage debt. Consequently, such lands are the subject of vendors' liens. But Smith, the vendor, waived his right to a lien by agreeing to accept the purchase-money in the manner and from the source provided by the covenant above quoted. Payment was to be made out of the proceeds of the sales of burial plots only, and by restricting himself to this single medium of payment, he thereby indicated his intention to waive his right to the security of a vendor's lien upon lands not devoted to that purpose. The principles of waiver, and the adjudicated cases in this state upon the subject, are discussed at length in the opinion of Vice-Chancellor Howell in *Knickerbocker Trust Co.* v. *Carteret Steel Co.,* 79 *N. J. Eq. 501.*

The status of the vendor was that of a common creditor of the cemetery association with the right to a semi-annual accounting; and it may be that upon habitual default, equity would relieve by a specific performance of the covenant, compelling the association to set aside ten per cent. of the proceeds of the sale of each burial plot. The court of errors and appeals, in fashioning the covenant so as to carry out, as nearly as possible, the intentions of the parties, left the vendor's contractual status undisturbed, and to this effect is its mandate that the consideration when liquidated "be treated as unpaid purchase price for the land until extinguished by payment in gross or by percentage from the price of lots *as provided in* the said covenant."

But it is not essential to a decision to determine with exactness the privileges, if any, of the claimants as against the cemetery association. The immediate question is whether they have priority over the costs and expenses of a managing receiver ad-

ministering a public charity, and this I feel is not open to serious discussion or consideration.

The rule is thoroughly settled that when a court of equity takes possession of property for the purpose of protecting and preserving it for the benefit of the parties interested, the costs of administration are entitled to priority of payment, regardless of the nature of the liens and claims thereon of the litigants. This is so fundamental to the administration of justice and so generally recognized that citation of authority is unnecessary. The rule is especially applicable in this case. But for the management of these enterprises by the receiver the covenant of the claimants would be valueless. And it is not to be overlooked that the preferential right set up by them did not arise from any fixed lien upon the property at the time it came to the hands of the receiver, which will be displaced. Whatever rights they have were born of this litigation. Then, too, beside conserving the rights of creditors, including the claimants, the operation of these cemeteries was indispensable to the maintenance of a sacred trust assumed by the corporations, and was also necessary for the protection of the public; for the public has an interest in them. Cemetery corporations are, in a sense, *quasi*-public service corporations. They have been so recognized. Of them Wymans, in his work on *Public Service Corporations,* section 69, says:

"The absolute necessity of public cemeteries is obvious. This necessity may be met either by cemeteries owned directly by the government or by chartered corporations. Such corporations are rarely empowered to take private profit from the conduct of the cemetery, but are obliged to devote their receipts to the purposes of the cemetery. Such being the case, the law concerning them is mostly that relating to public charities, which is outside the scope of this treatise. It may be noted, however, that it is common to exempt such cemeteries from taxation, and these exemptions are liberally construed in favor of the cemetery."

In *Evergreen Cemetery* v. *Henry Beecher, 53 Conn. 551,* Judge Pardee said: "The safety of the living requires the burial of the dead in proper time and place. * * * In order to secure for burial places during a period extending indefinitely into the

future that degree of care universally demanded, the legislature permits the associations to exist with power to discharge in behalf and for the benefit of the public the duty of providing, maintaining and protecting them. The use of land by them for this purpose does not cease to be a public use, because they require varying sums for rights to bury in different localities; not even if the cost of the rights is a practical exclusion of some. * * * It remains a public use as long as all persons have the same measure of right for the same measure of money." To the same general effect is *Davis* v. *Coventry, 65 Kan. 557; Wolford* v. *Crystal Lake, 54 Minn. 440; Close* v. *Glenwood, 107 U. S. 467.* Now, then, even if the claimant's so-called lien had been a fixed charge upon the property (if that were possible in cemetery promotions) when the receiver took hold, I would have been justified in subordinating it to the receiver's expenses in analogy with the rule in cases of insolvency of public service corporations proper, where the receiver operates primarily to discharge the corporation's duty to the public and for the doing of which the corporate property and the lienholders' rights may be appropriated. *Wallace* v. *Loomis, 97 U: S. 146.* The principles underlying the rule are adverted to in *Lockport Felt Co.* v. *United Box Board and Paper Co., 74 N. J. Eq. 690.* The case, however, does not require that I go to this length. It is sufficient, as already pointed out, that the claimants are parties litigants, and that the possession and operation of the property by the receiver is, amongst other things, for the benefit of the claimants.

The receiver will be permitted to use the fund to defray his allowances.