92 N.J. Super. 365 (1966)
223 A.2d 507
ABRA-MAY CEMETERY SALES CO., INC., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF,
v.
DEGEL YEHUDO CEMETERY CORPORATION OF NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY (A/K/A FLORAL PARK CEMETERY), AND ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 14, 1966.
*367 Mr. William Boorstein, attorney for plaintiff.
Mr. Harold G. Smith for defendant Degel Yehudo Cemetery Corporation of New Jersey (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Robert S. Kleinberg for defendant Arthur J. Sills, Attorney General of the State of New Jersey.
FURMAN, J.S.C.
Plaintiff Abra-May Cemetery Sales Company is a New York stock corporation which owns 3 1/2 acres, or 4,000 to 7,000 grave sites, in defendant Degel Yehudo Cemetery Corporation's Floral Park Cemetery in South Brunswick Township, Middlesex County. Its predecessor corporation acquired title from one Hyman Abramowitz in 1943 at a purchase price of $20,000.
Abra-May seeks a declaratory judgment that it may sell off its cemetery land without obligation to provide for care and maintenance, subject to applicable rules and regulations of the cemetery in effect at the time of the conveyances from defendant to Abramowitz in 1942 and 1943, or from Abramowitz to itself, but not to amended and supplemental rules and regulations.
*368 Both defendant, which counterclaims for care and maintenance assessments since 1943, and the Attorney General, who appears as a necessary party to safeguard the public interest, are in opposition.
The law of New Jersey is clear. Land dedicated for cemetery purposes is charitable trust property. Terwilliger v. Graceland Memorial Park Ass'n, 35 N.J. 259 (1961); Frank v. Clover Leaf Park Cemetery Ass'n, 29 N.J. 193 (1959); Passaic Nat'l Bank & Trust Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603 (E. & A. 1946). The Rural Cemetery Act, in R.S. 8:2-11, prohibits profits to rural cemetery associations:
"After the payment of the purchase money and the debts contracted therefor, and the cost of surveying and laying out the lands, the proceeds of all future sales of plots or lots shall be applied to the preservation, improvement and embellishment of the cemetery of the association, and for incidental expenses, and to no other purpose or object, so long as such embellishment is incomplete."
The public policy against profits from the ownership and operation of cemeteries, which is set forth in R.S. 8:2-11, governs New Jersey stock corporations organized for profit, as well as cemetery associations.
"Whether the operation should be considered a charitable trust and a quasi-public institution depends upon the nature of the use of the lands, not upon the character of the operator. The criterion is public user for cemetery purposes; not whether ownership or control is in the hands of an individual, a general business corporation, or an incorporated cemetery association." Terwilliger v. Graceland Memorial Park Ass'n, supra, 35 N.J., at p. 265.
The cemetery owner enjoys a real property tax exemption (R.S. 8:2-27) and immunity from mortgage foreclosures (R.S. 8:2-27; Frank v. Clover Leaf Park Cemetery Ass'n, supra). To forestall the abandonment of cemeteries and other derelictions the Attorney General has consistently pressed in cemetery litigation for the establishment of trust funds for perpetual care and maintenance out of the proceeds of burial *369 plot sales. See Frank v. Clover Leaf Park Cemetery Ass'n, supra, 29 N.J., at p. 205; Atlas Fence Co. v. West Ridgelawn Cemetery, 120 N.J. Eq. 239 (Ch. 1936), affirmed 120 N.J. Eq. 615 (E. & A. 1936).
In the pretrial order the parties stipulate that Degel Yehudo Cemetery Corporation is a "quasi-public charitable trust." It is a stock corporation organized under Title 14 of the Revised Statutes. Burials in its cemetery are restricted to decedents dying in the Jewish faith.
Abra-May contends that it, conversely, is not a charitable trust, that responsibility for care and maintenance must be borne by Degel Yehudo, and that the specific terms of the deeds to Abramowitz and its predecessor corporation exempt it from the amended and supplemental cemetery rules and regulations. It acknowledges that it has held the 3 1/2 acres as an investment for more than 20 years, without one resale. In the words of its secretary-treasurer, it is ready to launch a promotional campaign with the sole object "to make a profit."
Degel Yehudo in 1959 adopted a resolution that burial plots or lots must be offered to it for repurchase at the original price, prior to any resale to a third party, and that in the event of a resale to a third party, 20% of the gross proceeds must be paid over to it for deposit in the current maintenance fund and the permanent maintenance fund. Three years later the mandatory contribution to these funds was increased to 25%, 15% for current maintenance and 10% for permanent maintenance. Degel Yehudo has, in the last several years, demanded 20% or 25% deposits upon resales by bulk owners of burial plots.
The yearly assessments for care and maintenance and various other fees  for example, for grave openings and disinterments  have been increased by amended regulations.
The deeds from Degel Yehudo to Abramowitz and from Abramowitz to Abra-May recite that the respective grantees hold subject to the "attached" cemetery rules and regulations, with a right of resale without consent of the cemetery corporation.
*370 As a general principle, amended cemetery regulations increasing charges in proportion to costs are enforceable against prior plot owners. Any contrary holding would work an economic hardship upon a charitable trust.
Abra-May contends, further, that the Rural Cemetery Act, in R.S. 8:2-22, proscribes any limitation on the alienation of burial plots:
"The owner of a plot or lot in a cemetery owned by an incorporated association, whether incorporated under a general or special law of this state, and having a board of managers or trustees, may transfer and convey the same to any person or to the cemetery association having charge of the cemetery in which the plot or lot is situate, notwithstanding any restriction on or prohibition of the sale of plots or lots contained in the general laws of the state concerning cemeteries, or in the charter of any such cemetery association.
Before any such transfer or conveyance is made, the board of managers or trustees of the association shall authorize the same by a vote of at least three-fifths of its members at a regular meeting thereof."
A corporation such as Degel Yehudo which owns and operates a cemetery is governed by both the Rural Cemetery Act and the General Corporation Act as part of its charter. Terwilliger v. Graceland Memorial Park Ass'n, supra; State by Furman v. Jefferson Lake Sulphur Co., 36 N.J. 577 (1962), appeal dismissed, certiorari denied 370 U.S. 158, 82 S.Ct. 1253, 8 L.Ed.2d 402 (1962). Any attempted evasion by deed or contract is ultra vires. See Terwilliger v. Graceland Memorial Park Ass'n, supra, 35 N.J., at p. 268.
Accordingly, the attempted restriction that burial plots and lots must first be offered to Degel Yehudo for repurchase is struck down as contrary to R.S. 8:2-22. Approval of the Degel Yehudo board of directors by a three-fifths vote is prerequisite to any resale by Abra-May to a third party.
To the extent that Degel Yehudo's rules and regulations now in effect are not in conflict with governing statutes, the court holds them applicable to Abra-May. The incorporation in its predecessor's deeds of then published rules and regulations cannot insulate Abra-May against reasonable amendments which apportion cemetery charges to rising costs.
*371 Abra-May seeks an exemption from the regulation setting a yearly assessment for care and maintenance on two grounds, in addition to its general argument that it is not subject to amended and supplemental rules and regulations. It claims that its predecessor, Abramowitz, was entitled to care and maintenance without assessment and that it enjoys this right through him. That construction is contrary to the rules and regulations attached to the deed, which specifically relieve Abramowitz but not his grantees or transferees from the obligation to pay reasonable costs for care and maintenance services.
Abra-May's other contention is that it tended its 3 1/2 acres, cut the grass, and otherwise kept the property neat over the years; thus the counterclaim should fail factually. Based upon defendant's contrary proofs the court finds that Degel Yehudo performed these services at least to the value of 50 cents per plot per year to 1958, and $1 per plot per year thereafter, the charges fixed in the cemetery rules and regulations. Occasionally Abra-May cut high grass in the exercise of its reserved authority to tend its own plots. See Van Buskirk v. Standard Oil Co., 94 N.J. Eq. 686, 691 (Ch. 1923), reversed on other grounds 100 N.J. 301 (E. & A. 1926). The court also finds that no bills for such maintenance services were transmitted from Degel Yehudo to Abra-May until the start of this controversy.
Abra-May has pleaded the statute of limitations (N.J.S. 2A:14-1) in defense of the counterclaim. Although a cause of action by a trustee, the counterclaim is grounded in contract. The grass cutting and other services have been rendered by Degel Yehudo. Abra-May's obligation to reimburse Degel Yehudo is fixed by deed. A trustee may be barred on a contract claim by the statute of limitations. Degel Yehudo is granted judgment on its counterclaim at the rate of $1 per plot per year from July 26, 1959, six years preceding the filing of the complaint, to date.
The critical remaining issue is whether Abra-May, pursuant to R.S. 8:2-11, the defendant's cemetery rules and *372 regulations, or decisional law, must set aside adequate funds for perpetual care and maintenance of burial plots out of the proceeds of resales to third parties.
A series of judicial decisions has struck down profits to corporations or individuals, not the owners or operators of cemeteries, in a position of advantage to profit from the sale of cemetery lands. Fidelity Union Trust Co. v. Union Cemetery Ass'n, 136 N.J. Eq. 15 (Ch. 1944), affirmed 137 N.J. Eq. 455 (E. & A. 1946) (New Jersey stock corporation had purchased cemetery lands and acted as sales agent for cemetery association); George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 139 N.J. Eq. 280 (Ch. 1947) (New Jersey stock corporation had purchased land and reconveyed it to an affiliated cemetery association); Burke v. Gunther, 128 N.J. Eq. 565 (Ch. 1941) (bondholders secured by a mortgage on cemetery land had preferential opportunity to purchase lots and plots at one-half list price and resell to third parties); see Parker v. Fidelity Union Trust Company, 2 N.J. Super. 362, 387 (Ch. 1944) (testatrix' bequest for upkeep of cemetery lots which she had sold off as a business venture in her lifetime upheld as charitable, in recognition of an obligation to the public, and not in violation of the rule against perpetuities).
The court finds as a fact that Abra-May has held ownership to 3 1/2 acres of cemetery land, with a resale value several times in excess of its purchase price in 1943, as a business investment. It is therefore subject to equitable restraint in accordance with the legislative policy of R.S. 8:2-11.
The Attorney General is satisfied that a contribution of 25% of the proceeds of resales towards care and maintenance is adequate. The cemetery regulation fixing that percentage must be complied with by Abra-May. In addition, Abra-May will remain subject to investigation by the Attorney General and supervision by the court in the enforcement of the strongly declared public policy of this State against any profit from the ownership and sale of cemetery lands.
Submit a judgment.