106 N.J. Super. 374 (1969)
256 A.2d 46
C. LLOYD LAWLOR, AS EXECUTOR OF THE ESTATE OF EDITH LAWLOR, AND C. LLOYD LAWLOR, INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
CLOVERLEAF MEMORIAL PARK, INC., A CORPORATION, AND CLOVERLEAF MEMORIAL PARK ASSOCIATION, DEFENDANTS-RESPONDENTS,
v.
JOSEPH LEPREE AND THE RAHWAY HOSPITAL, THIRD-PARTY DEFENDANTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1969.
Decided July 10, 1969.
*376 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Kenneth J. McGuire argued the cause for plaintiff-appellant (Messrs. Stein, Bliablias & Goldman, attorneys).
Mr. Stephen J. Foley argued the cause for defendants-respondents Cloverleaf Memorial Park, Inc., a corporation, *377 and Cloverleaf Memorial Park Association (Messrs. Campbell, Mangini, Foley, Lee & Murphy, attorneys).
Mr. Thomas T. Chappell argued the cause for defendant-respondent and cross-appellant Joseph Lepree (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys; Mr. H. Curtis Meanor, on the brief).
Mr. Daniel K. Van Dorn argued the cause for defendant-respondent and cross-appellant The Rahway Hospital (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff C. Lloyd Lawlor, individually and as executor of the estate of his deceased wife, Edith Lawlor, appeals from an order dated February 2, 1968 dismissing his suit as against defendant Cloverleaf Memorial Park Association and from an order dated June 7, 1968 dismissing his wife's claim under the Survival Act, and his per quod claim, against Dr. Joseph Lepree (Lepree) and The Rahway Hospital (the hospital). Lepree and the hospital cross-appeal from an order denying summary judgment in their favor as to the count for decedent's wrongful death.
On September 6, 1964 Mrs. Lawlor, while in the process of placing flowers on the grave of her mother in Cloverleaf Memorial Park, fell into a concealed hole and was injured. On February 16, 1965 she sought compensation for her injuries, and her husband sued per quod, in a suit against defendants Cloverleaf Memorial Park, Inc. (the corporation) and Cloverleaf Memorial Park Association (the Association).
On July 5, 1966 both defendants filed a third-party complaint against Lepree and the hospital charging negligence in the treatment of Mrs. Lawlor's injuries and seeking indemnification or contribution. On December 23 of the same year Mrs. Lawlor died, allegedly as a result of her injuries and of an infectious disease contracted while she was hospitalized.
*378 On January 26, 1968 the court granted defendants' motion for summary judgment, finding that Cloverleaf Memorial Park, Inc. did not own the cemetery at the time of the accident, that Cloverleaf Memorial Park Association was a charitable institution within the intendment of N.J.S. 2A:53A-7 and that Mrs. Lawlor was a beneficiary of the charity and hence barred from recovery against it. At the same time the court granted leave to substitute the executor as plaintiff, to amend the complaint to include counts against Lepree and the hospital, directly, for negligence and malpractice, and a count for wrongful death against Cloverleaf, Lepree and the hospital. Following the filing of the amended complaint both Lepree and the hospital moved for summary judgment on the ground that the statute of limitations barred the counts against them. The trial judge, in an opinion reported, at 101 N.J. Super. 134, dismissed the counts for Mrs. Lawlor's injuries and Mr. Lawlor's per quod damages as barred by the two-year statute of limitations but declined to strike the count for wrongful death. Leave to appeal had previously been granted as to the dismissal as to Cloverleaf. The additional appeals followed (also pursuant to leave granted) and all appeals were consolidated.
Three basic issues are presented by the present appeals, viz., (1) whether N.J.S. 2A:53A-7 et seq. conferred charitable immunity upon defendant Cloverleaf Memorial Park Association; (2) whether the two-year statute of limitations, N.J.S. 2A:14-2, barred plaintiff's direct suit against defendants Lepree and the hospital for his wife's personal injuries and her pain and suffering, and his expenses and loss of services prior to her demise, and (3) whether the omission of Mrs. Lawlor to institute suit against them for her personal injuries within two years of the time of her last treatment barred an action for her wrongful death brought more than two years after her injuries but less than two years after her decease. We treat them in that order.

*379 I
The doctrine which affords immunity from liability for negligence to charitable organizations was enunciated by our highest court in D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925). Thereafter, from time to time, broad exceptions to the rule were carved out, Kolb v. Monmouth Memorial Hospital, 116 N.J.L. 118 (E. & A. 1936); Rose v. Raleigh Fitkin-Paul Morgan &c. Foundation, 136 N.J.L. 553 (E. & A. 1948); Lindroth v. Christ Hospital, 21 N.J. 588 (1956), culminating in the outright repeal of the doctrine in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958).
Thereafter the Legislature enacted L. 1959, c. 90, now N.J.S. 2A:53A-7, on which Cloverleaf's claim to immunity is based. It provides:
"No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as it hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their [sic] liability for any such negligence."
Neither L. 1959, c. 90, which later became N.J.S. 2A: 53A-7 et seq., nor its predecessor, L. 1958, c. 131, were accompanied by any statement of purpose. Their effect was to reinstate the common law doctrine as it had been defined in our courts. Cf. Wiklund v. Presbyterian Church of Clifton, 90 N.J. Super. 335, 338 (Cty. Ct. 1966).
Defendant Cloverleaf Memorial Park Association was originally incorporated in 1927 as Boulevard Park Cemetery *380 Association under the Rural Cemetery Act, Rev. 1877, p. 100, now R.S. 8:1-1 et seq. It operates a memorial park type cemetery in Woodbridge Township, Middlesex County. It adopted its present name on October 18, 1933. On January 2, 1936 it purchased from Cloverleaf Memorial Park, Inc. the land which it has improved and developed, and now maintains and operates as a place for the burial of the dead.
The spiritual and material benefits afforded communities by cemetery associations have long been recognized. Terwilliger v. Graceland Memorial Park Ass'n, 35 N.J. 259 (1961); Attorney-General v. Linden Cemetery Ass'n, 90 N.J. Eq. 404 (Ch. 1919). For this reason it has been held in numerous cases that lands dedicated and utilized as a place of sepulture are devoted to a charitable use; that cemeteries organized under R.S. 8:1-1 et seq. are proper objects for charitable bequests and represent valid charitable trusts. Passaic National Bank &c., Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603, 607 (E. & A. 1945); Abra-May Cemetery Sales Co. v. Degel Yehudo Cemetery Corp., 92 N.J. Super. 365 (Ch. Div. 1966); Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957); Moore v. Fairview Mausoleum Co., 39 N.J. Super. 309 (App. Div. 1956); Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. 1932); Wendell v. Hazel Wood Cemetery, 3 N.J. Super. 457 (Ch. Div. 1949).
Plaintiff, while conceding that the association is incorporated under the Rural Cemetery Act and that cemetery services have been held to be charitable, urges that the statute did not contemplate the immunization from liability of such associations and, alternatively, that Cloverleaf did not qualify as a nonprofit association "organized exclusively" for charitable purposes within the contemplation of N.J.S. 2A:53A-7.

(a)
Our attention is not called to any New Jersey case in which the charitable immunity doctrine has been specifically *381 applied to the operation of a cemetery. In Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 97 (Sup. Ct. 1936), where a verdict against a cemetery was upheld, the court noted that "the question of the liability of the corporate administrator of a charitable use for the willful wrong of its servant in the discharge of duties assigned to him is not raised, and therefore need not be regarded." However, in Long v. Rosedale Cemetery, 84 F. 135 (Cir. Ct. D.N.J. 1897) a complaint charging negligence on the part of a cemetery employee was sustained on demurrer as against the contention that defendant, organized under the predecessor to the present Rural Cemetery Act, was a charitable organization and hence not responsible for the wrongful acts of its servants. The court there noted:
"It is insisted that the defendant corporation is a charitable organization, and, as such, relieved from responsibility for the wrongful acts of its servants. The test which determines whether such an enterprise is charitable or otherwise is its purpose. If its purpose is to make profit, it is not a charitable enterprise. * * *. The court has not at hand any means by which this test may be applied, and is therefore unable to dismiss the plaintiff's suit on that ground." (at p. 136)
See also 14 Am. Jur.2d, Cemeteries, § 8, p. 707 (1964); cf. Olson v. Riverview Cemetery Association of Portland, 220 Or. 220, 349 P.2d 279 (Sup. Ct. 1960).
Plaintiff argues that the classification of cemeteries organized under the Rural Cemetery Act as charitable organizations entitled to immunity from suits for negligence is inconsistent with legislation separately exempting such cemeteries from taxation. They urge that if cemeteries came within the definition of charitable institutions, there was no need for their separate treatment. By Art. VIII, § I, par. 2 of the New Jersey Constitution (1947) the exemptions from taxation of real and personal property used exclusively for religious, educational, charitable or cemetery purposes may not be altered or repealed. This separate treatment *382 of cemetery associations has been carried into R.S. 8:2-27, which exempts the cemetery lands and property of any cemetery association from all "taxes, rates or assessments." The exemption dates back to the Revision of 1877, is found in 1 Comp. Stat. (1910), § 8, p. 375 and was carried over into the 1937 Revision. In addition, graveyards and burial grounds not exceeding ten acres in area are separately exempted from taxation by N.J.S.A. 54:4-3.9. In In re Kuebler (Fairview Cemetery Company v. Kingsley), 106 N.J. Super. 13 (App. Div. 1969), it was held that where the Legislature had failed to specifically provide in N.J.S.A. 54:34-4 (d) that a devise to a nonprofit cemetery for cemetery purposes was exempt from inheritance taxes, it was not exempt as a gift to a "charitable" or "benevolent" organization.
The problem of construction inherent in tax exemption cases is to be distinguished from the one here involved. The fundamental approach of our tax statutes is that ordinarily all property shall bear its equal and just share of the burden of taxation. Town of Bloomfield v. Academy of Medicine of New Jersey, 47 N.J. 358, 363 (1966). Thus, statutes granting exemption from taxation are to be strictly construed, and doubts as to eligibility for exemption are to be resolved against the claimant. Board of National Missions v Neeld, 9 N.J. 349, 353 (1952). A claimed exemption from taxation "must find support in clear and unmistakable expressions of the legislative act." Hopkins v. Neeld, 41 N.J. Super. 345, 351 (App. Div. 1956). Here, on the contrary, we are enjoined by the Legislature that N.J.S. 2A:53A-7 is "remedial legislation" and "shall be liberally construed" so as to afford immunity to the corporation, society or association described therein from liability as provided therein "in furtherance of the public policy" for their protection. N.J.S. 2A:53A-10. With that mandate in mind we hold that cemeteries organized under the Rural Cemetery Act that otherwise comply with the requirements for immunity are covered by N.J.S. 2A:53A-7.

*383 (b)
It remains to be determined whether the status of the association was such as to justify the grant of summary judgment. While the issue of whether the Legislature intended to include cemetery associations in the category of the charitable associations referred to in N.J.S. 2A:53A-7 was one of law, the issue of whether a specific cemetery qualifies for charitable immunity is ordinarily one of fact to be resolved at trial. Summary judgment may be granted only when it palpably appears that there is no genuine issue of material fact. R.R. 4:58-3; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). Summary judgment is to be granted with caution, especially where the good faith and motives of the moving party are involved or where, as here, the opposing party must prove his claim from what he can draw from the moving party. Id., at p. 76.
Here the answer filed by the association (on April 7, 1965) had not set up charitable immunity as a defense. Not until the pretrial did it ask for leave to amend to include it. Two years later it moved for summary judgment on the basis of the affidavit of Schwabacher, the treasurer of the corporation, and London, the president of the association. Schwabacher's affidavit did no more than establish that the association, rather than the corporation, held title to the property. London's affidavit stated, in pertinent part, that the association was engaged in the operation of a cemetery pursuant to R.S. 8:1-1 et seq., which operation had been held to be a charitable trust under Frank v. Clover Leaf Park Cemetery Ass'n, 29 N.J. 193 (1959) and that it was tax exempt. There was nothing in either affidavit as to the specific nature of the activities being carried on by the association, or its management or financial affairs. In Frank our Supreme Court had found that until then (1959) the association had been operating a cemetery marker business for profit, and ordered it to desist.
*384 Subsequent to the filing of the appeal we granted leave to plaintiff to take depositions, and in pursuance thereof the testimony of London, the association's president, and Rohn, its accountant, was taken.
Plaintiff argues from the foregoing that the association was not "organized exclusively" for charitable purposes but, in actuality, represented an important phase of a profit-making enterprise. We need not decide the issue except to hold that summary judgment should not have been granted. The affidavits on which it was based were inadequate for that purpose, and the facts revealed by the depositions, to which reference will now be made, confirm our conviction.
The two tracts comprising 110-plus acres with which the association began operations had belonged, one-half each, to two groups of individuals, the Walker-London group and the Lustgarden group. London later became a principal stockholder, a director and an officer of Cloverleaf Memorial Park, Inc. and is currently a trustee and the president of Cloverleaf Memorial Park Association. Walker, since deceased, who was London's associate, was a member of the firm of Morrissey & Walker, principally engaged in seashore real estate development. While our examination of the affidavits and depositions indicates some reticence in revealing details of the intercompany dealings which followed, it is conceded that on November 15, 1933 the real estate owned by the two groups was turned over (via a corporation bearing the name of Super Home Development Co.) to Cloverleaf Memorial Park, Inc. (not organized under the Rural Cemetery Act) whose stockholders were members of the two groups, and whose president was Walker, and secretary, London. On January 2, 1936, again for an undisclosed sum, the corporation conveyed to the association, subject to two outstanding mortgages in the sum of $5,000 and $9,000, respectively. It is conceded that from that time on the sole asset of the corporation was whatever amount was due it from the sale of its lands to the association. How much, if anything, was thereafter paid on account of the purchase *385 price is not clear from the record (R.S. 8:2-11 requires that at least one-half of the proceeds of the sales of lots be applied to the amount owing), but in 1954 the association purchased the entire capital stock of the corporation for $345,000 in 3% bonds, which sum is said to have represented the balance then due. Here one additional fact is to be noted  in "the early 1950's" some 55 acres (about one-half) of the tract was sold by the association to Sommer Brothers for development purposes. Of the consideration of $60,000 "some of the monies were used for development in the park, and there was a distribution at the time to the owners of the park." (Emphasis added.) Some 13 years after its stock had been purchased by the association (and two years after the present suit was instituted) the corporation was dissolved (February 2, 1967). At the time of the bringing of the present suit the amount claimed to be due the bondholders was $325,625, plus accrued interest of $19,538. (On September 10, 1965 $100,000 in unpaid interest was allegedly cancelled by the bondholders upon payment to them of $5,000 on account of principal.)
The association charged $450 for a two-grave plot, and of this 5% was paid into the cemetery's perpetual care fund (the dedicated fund account). Some 245 plots were sold between 1964 and 1967, inclusive, leaving 5,561 plots unsold. The usual charges were made for internments. In addition, the association had engaged in the business of selling grave markers from the time it began business until 1959 when the practice was ended upon the rendition of the Supreme Court's opinion in Frank v. Clover Leaf Park Cemetery Ass'n, supra.
Besides the salaries paid to the manager and his staff of maintenance and sales personnel, London's annual salary from the association was fixed at $5,000. His son Donald London, as treasurer, and one other not named were to receive, together, an additional sum of $2,000 annually. The current trustees were London, his son Donald, his daughter Ruth Schwabacher, Mrs. Emma Walker, John Rogge and *386 Mrs. John Rogge. Neither London nor his son had received the mentioned salaries for some years, but the unpaid amounts were carried by the association as an account payable. In its financial statement dated September 30, 1963, they amounted to $44,556, and as of September 30, 1966, to approximately $64,016. The bonds continued in the hands of the persons who had been the original owners of the land, or of members of their families.
Without expressing any opinion as to the merits, we are convinced from the foregoing that whether the nature of the association's operations was such as to afford it immunity from liability for its asserted negligence was an issue of fact to be resolved after a full trial. Cf. Long v. Rosedale Cemetery, supra, 84 F., at p. 136. If it is there determined that the association's cemetery lands have been managed for private profit under the guise of a charitable use, the association would not be immunized from liability. Cf. City of Clifton v. State Board of Tax Appeals, 133 N.J.L. 379 (E. & A. 1945); City of Clifton v. State Board of Tax Appeals, 136 N.J.L. 213 (E. & A. 1947); Geo. Washington, &c. v. Memorial &c., Co., 139 N.J. Eq. 280, 287-293 (Ch. 1947); Burke v. Gunther, 128 N.J. Eq. 565 (Ch. 1941).

(c)
In the event that it be factually determined that the activities of the association were such as to immunize it from liability to a "beneficiary" of its "works," we are satisfied that Mrs. Lawlor was such a beneficiary rather than a person "unconcerned in and unrelated to and outside of its benefactions." In Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), affirmed 110 N.J.L. 509 (E. & A. 1933), the court had occasion to pass upon a contention similar to that here made by appellant. There the plaintiff was a mother who had been injured while upon hospital premises for the purpose of visiting her sick child. In rejecting the contention the court held:
*387 "Plaintiff entered the premises voluntarily and for her own purposes. To the extent that her need went  that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence  she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. * * * The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity." (108 N.J.L., at p. 456)
While the decision in Boeckel was based upon the common law immunity doctrine, N.J.S. 2A:53A-7 et seq. did not modify or alter the preexisting immunity granted to charitable and religious institutions. Cf. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 535-536 (App. Div. 1962), certification denied 38 N.J. 305 (1962). In the latter case it was held that whether the injured person was the beneficiary of the work of a charitable institution was not to be determined from "a showing that the claimant personally received a benefit from the works of the charity. Rather, the ratio decidendi was whether the institution pleading the immunity, at the time in question was engaged in the performance of the charitable objectives it was organized to advance." In Anasiewicz plaintiffs, who though Roman Catholics were not members of defendant Sacred Heart Church, were held to be beneficiaries while attending a church wedding service there. See also Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939) (plaintiff a nonmember of a church society injured while attending Girl Scout meeting in church house); compare Book v. Aguth Achim Anchai of Freehold, N.J., 101 N.J. Super. 559 (App. Div. 1968) (plaintiff, a Catholic, injured while at bingo conducted by Jewish synagogue).
Here it appears clear to us that Mrs. Lawlor was a beneficiary of the cemetery's "works." It was operated and maintained not only for the reception of bodies for burial but to afford an opportunity for relatives and friends of those buried there to pay their respects and to experience spiritual solace while visiting the last resting place of those dear to them. If Mrs. Lawlor was not a beneficiary, it is difficult to *388 conceive who  except those already interred there  could qualify as such.

II
Plaintiff next challenges the granting of summary judgment in favor of Lepree and the hospital as to the counts of the amended complaint seeking damages for his wife's conscious pain and suffering, and his claim for loss of services and medical expenses in connection with her care. While we are not in entire accord with the trial judge's reasons for the challenged action, we agree with the result.
As noted, the accident occurred on September 6, 1964; Mrs. Lawlor entered the Rahway Hospital on that day and remained under the care of Dr. Lepree until October 17, 1964; the third-party suit was filed against the hospital and Lepree on July 5, 1966; Mrs. Lawlor died on December 23, 1966, and plaintiff's motion, dated January 26, 1968, to be permitted to file a complaint against them was granted on February 5, 1968.
Plaintiff urges that defendants' motion should have been denied on the authority of De Sisto v. City of Linden, 80 N.J. Super. 398 (Law Div. 1963). In that case an amendment to the complaint was allowed, after the two-year statute of limitations had run, to bring in as an additional defendant one who had been made a third-party defendant within the two year period, the court holding that:
"* * * a new claim based on the same occurrences and the same wrong against an existing party may be asserted when that party has become a party and has been alerted to the claim before the running of the statute." (at p. 406)
In ruling that the two-year limitation prescribed by N.J.S. 2A:14-2 compelled the granting of the motion, the trial judge declined to follow De Sisto v. City of Linden. That was before the coming down of Greco v. Valley Fair Enterprises, etc., 105 N.J. Super. 582 (App. Div. 1969). There, plaintiffs were permitted, after expiration of the *389 two-year limitation, to add as a defendant in their suit one who had been made a defendant in a third-party complaint charging that he negligently participated in bringing about the condition which had caused plaintiff's injury. We there held:
"* * * a third-party defendant who was joined as such prior to expiration of the limitation period may, on plaintiff's motion to amend, be made a direct defendant after the expiration of that period provided the amended complaint is based upon the same occurrence and the same wrong referred to in the pending third-party complaint against him."
Compare Taylor v. Loyal Order of the Moose, 90 N.J. Super. 1 (Law Div. 1965), where the third-party complaint had not been filed until after expiration of the two-year period.
However, we find that the facts in the present case did not justify denial of defendant's motion for summary judgment on the basis of either Greco or De Sisto. In both the cause of action asserted against the old and the new defendant was the same, i.e., responsibility, jointly or severally, for the condition which had brought about plaintiff's injury. It was a new claim based on the same occurrences and the same wrong as had been substantially charged in both the original and third-party complaints.
Here, plaintiff was not seeking to add a new party alleged to have been equally responsible with Cloverleaf for the condition which brought about his wife's injury. Instead, he sought to inject a new cause of action based upon acts of negligence and malpractice which took place at some time (between September 6 and October 17) after the occurrence of the initial injury[1]. Such a cause of action, different in *390 character and arising out of circumstances other than those set forth in the original pleading, De Sisto v. City of Linden, supra, 80 N.J. Super., at p. 406, could not be added after the expiration of two years from the time it accrued. At the latest, the time began to run on October 17, 1964, the date of Mrs. Lawlor's discharge from hospital treatment. Cf. Rosenau v. New Brunswick, 51 N.J. 130 (1968). Thus, the action could not be maintained after October 17, 1966. Rex v. Hutner, 26 N.J. 489 (1958).
The trial judge also determined that by reason of the dissimilarity between the negligence asserted against Cloverleaf and the negligence and malpractice asserted against the hospital and Dr. Lepree, the latter had been erroneously joined as third-party defendants. While unnecessary to determination of the issues here, we call attention to the fact that R.R. 4:14-1 permits the bringing in, by defendant as third-party plaintiff, of one "who is or may be liable to him for all or part of the plaintiff's claim against him." Here, the third-party complaint contained three counts, two of which sought indemmification rather than contribution. As to these, at least, the third-party defendants were properly joined. Of course, we express no opinion as to the merits of the claims for indemnification.

III
Defendants Lepree and the hospital challenge the denial of their motion for summary judgment dimissing plaintiff's action under the Wrongful Death Act, N.J.S. 2A:31-1 *391 et seq., urging that since decedent did not bring an action against them within the two-year period of limitation prescribed for injuries to the person, no right of action for her wrongful death could be asserted thereafter.
N.J.S. 2A:31-1 provides as follows:
"When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured * * *."
The statute authorizes the bringing of an action by decedent's executor and requires that the action be commenced within two years of decedent's death, N.J.S. 2A:31-2 and 3. It has been held that the statute created a new cause of action, for the exclusive benefit of the dependent next-of-kin of the deceased, to whom the amount recovered is to be paid over, free and clear of decedent's debts. Soden v. Trenton & Mercer County Traction Corp., 101 N.J.L. 393, 398 (E. & A. 1925).
Our Death Act is patterned after Lord Campbell's Act (1846). In Coulter v. New Jersey Pulverizing Co., 11 N.J. Misc. 5, 163 A. 661 (Sup. Ct. 1932), the court, following Williams v. Mersey Docks and Harbour Board, 1 K.B.D. 804, 808 (1905), held that the omission of a decedent to institute suit for his injuries within the two-year period fixed by the statute of limitations precluded the subsequent bringing of an action for his wrongful death. It held:
"In the present cases, the decedents' actions were lost by lapse of time. Since the decedents had no cause of action, their representatives had none. Had the decedents satisfied their claims, the representatives could not have asserted a nonexisting cause of action. The statute of limitations is as much of a bar as a release." (11 N.J. Misc., at p. 7)
In Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333 (E. & A. 1933), the court, concurring in the reasoning *392 of Coulter, held that since any right of action which decedent had possessed during his lifetime had been barred by limitation before his death, the Death Act did not create a right of action for his wrongful death in his personal representative. Knabe was followed in Biglioli v. Durotest Corp., 44 N.J. Super. 93 (App. Div. 1957), affirmed 26 N.J. 33 (1958). See also Altzheimer v. Central Railroad Co., 75 N.J.L. 424 (Sup. Ct. 1907); Redick v. Rohm and Haas Co., 97 N.J. Super. 58 (Law Div. 1967).
The trial judge denied summary judgment on the authority of Kotkin v. Caprio, 65 N.J. Super. 453 (App. Div. 1961), certification denied 34 N.J. 470 (1961), and plaintiff urges that this was proper. We disagree. In Kotkin the accident occurred on May 2, 1957, decedent died June 13, 1957, and the complaint seeking damages for her death was filed on May 29, 1959. To the extent here pertinent, all that we held in that case was that where the injured person died as a result of the accident but while she still had a cause of action for her injuries, a new and separate cause of action for her death arose, with its own statute of limitations. Since decedent in that case could still have maintained her action when she died five weeks after the accident, it was of no moment that her executor had failed to sue thereafter for her pain and suffering but permitted the statute which applied to that cause of action to expire. So long as she died while still qualified to sue, her administrator ad prosequendum or executor had two years within which to bring an action for her death.
We recognize that there is a diversity of opinion and that all jurisdictions do not follow the construction of the Death Act which has been adopted by our courts. 2 Harper and James, Torts, § 24.7, pp. 1296-1297 (1956). In a number of states whose wrongful death act is patterned after Lord Campbell's Act, recovery has been permitted even though decedent had lost his right to sue. See Hoover v. Chesapeake and Ohio R. Co., 46 W. Va. 268, 33 S.E. 224 (Sup. Ct. 1899); DeHart v. Ohio Fuel Gas Co., 84 Ohio App. 62, 85 *393 N.E.2d 586 (Ct. App. 1948); Annotation, 167 A.L.R. 894, 901-903 (1947). However, until the cited pronouncements of our courts are overruled by our highest court, we consider ourselves bound by them.
Since Mrs. Lawlor did not institute suit for her own injuries within two years after her cause of action accrued against appellants, and since the amended complaint against them did not relate back to the time of filing the original complaint against Cloverleaf, her executor had no cause of action against appellants for her death.
By reason of the foregoing the summary judgment in favor of defendant Cloverleaf Memorial Park Association is reversed, the summary judgment in favor of defendants Joseph Lepree and the Rahway Hospital is affirmed, and the denial of summary judgment as to the aforementioned defendants is reversed.
Reversed and remanded for further proceedings in accordance with this opinion. No costs.
NOTES
[1] R. 4:9-3, to be effective September 8, 1969, provides as follows:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."